UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN LUCAS,<br><br>    Petitioner,<br><br>v.<br><br>G.J. JANDA,<br><br>    Respondent. | Case No.:  15cv1923-AJB (BLM)<br><br>**REPORT AND RECOMMENDATION FOR ORDER:**<br><br>**(1) DENYING PETITION FOR WRIT OF HABEAS CORPUS  [ECF No. 1];**<br><br>**AND**<br><br>**(2) DENYING RESPONDENT'S MOTION TO DISMISS AS MOOT [ECF No. 8].** |

This Report and Recommendation is submitted to United States District Judge Anthony J. Battaglia pursuant to 28 U.S.C § 636(b) and Civil Local Rules 72.1(d) and HC.2 of the United States District Court for the Southern District of California.  On August 31, 2015, Petitioner

Justin Lucas, a state prisoner proceeding *pro se* and *in forma pauperis*, commenced these habeas corpus proceedings pursuant to 28 U.S.C. § 2254. ECF No. 1 ("Pet."). Petitioner challenges a decision by the prison's senior disciplinary hearing officer finding him guilty of distributing a controlled substance and imposing an 180-day forfeiture of credits and other penalties. Id. at 5; see also id. 28-40.

On December 18, 2015, Respondent filed a motion to dismiss asserting that the petition is procedurally defaulted because "the California Supreme Court denied [Petitioner's] claim as a result of his failure to exhaust his administrative appeals." ECF No. 8 at 1-2 ("MTD"). On January 12, 2016, Petitioner filed a "Traverse to Respondent's Return," and on February 1, 2016, an opposition to the motion to dismiss. ECF Nos. 9-11. In both documents, Petitioner opposed the procedural default on the grounds that prison officials prevented him from filing a timely challenge to his conviction and penalty. See ECF Nos. 10 & 11.

After reviewing Plaintiff's filings, the Court issued an order requiring Respondent to file a reply. ECF No. 12. On February 11, 2016, Respondent requested additional time to file his reply, which the Court granted. ECF Nos. 13 & 14. In light of the additional briefing required for the motion to dismiss, the Court also ordered the parties to address the merits of the Petition. ECF No. 14 at 2. In accordance with the Court's order, Respondent filed a Reply to Petitioner's Opposition to Defendant's Motion to Dismiss [ECF No. 15 ("Reply")] and an answer [ECF No. 16-1 ("Ans.")] on March 14, 2016, and Petitioner filed a traverse on April 7, 2016 [ECF No. 18 ("Trav.")].

The Court has considered the above documents as well as the record as a whole. For the reasons set forth below, this Court **RECOMMENDS** that the Petition for Writ of Habeas Corpus be **DENIED**, and that Respondent's motion to dismiss be **DENIED** as **MOOT**.

# SCOPE OF REVIEW

Title 28 of the United States Code, section 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

The Petition was filed after enactment of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214. Under 28 U.S.C § 2254(d), as amended by AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In making this determination, a court may consider a lower court's analysis. Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991) (authorizing a reviewing court to look through to the last reasoned state court decision). Summary denials are presumed to constitute adjudications on the merits unless "there is reason to think some other explanation for the state court's decision is more likely." Harrington v. Richter, 562 U.S. 86, 99-100 (2011).

A state court's decision is "contrary to" clearly established federal law if the state court: (1) "applies a rule that contradicts the governing law set forth in [Supreme Court] cases"; or (2) "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

A state court's decision is an "unreasonable application" of clearly established federal law where the state court "'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413). "[A] federal habeas court may not issue [a] writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable." Id. at 75-76 (citations and internal quotation marks omitted). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412.

If the state court provided no explanation of its reasoning, "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." Harrington, 562 U.S. at 102. In other words, a federal court may not grant habeas relief if any fairminded jurist could find the state court's ruling consistent with relevant Supreme Court precedent.

Finally, habeas relief also is available if the state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); Wood v. Allen, 558 U.S. 290, 293 (2010). A state court's decision will not be overturned on factual grounds unless this Court finds that the state court's factual determinations were objectively unreasonable in light of the evidence presented in state court. See Miller-El v. Cockrell, 537 U.S. 322, 340 (2003); see also Rice v. Collins, 546 U.S. 333, 341-42 (2006) (the fact that "[r]easonable minds reviewing the record might disagree" does not render a decision objectively unreasonable). This Court will presume that the state court's factual findings are correct, and Petitioner may overcome that presumption only by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007).

## **DISCUSSION**

Petitioner alleges that his due process rights were violated when he was found guilty of distributing a controlled substance because there was no evidence supporting a finding that he knowingly possessed the drugs. Pet. at 10-13; Trav. at 8-11. Petitioner emphasizes that he was asleep when the officers arrived to conduct the random search, that the drugs were not in plain view and were found in his cellmate's belongings, and that his cellmate accepted responsibility for the drugs and exonerated Petitioner. Id. Respondent counters that Petitioner's claim is procedurally defaulted because Petitioner failed to exhaust his administrative remedies and the California Supreme Court denied his state habeas petition on that basis. MTD at 1-2; ECF No. 8-1 at 2-5; Reply; Ans. at 2. Alternatively, Respondent asserts that the petition should be denied on the merits because there was the requisite "some

evidence" supporting the decision. Ans. at 2-4 (citing Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445 (1985)).

**A. Procedural Default**

The Ninth Circuit has held that because procedural default is an affirmative defense, Respondent must first have "adequately pled the existence of an independent and adequate state procedural ground . . . ." Bennett v. Mueller, 322 F.3d 573, 586 (9th Cir. 2003). Once the defense is placed at issue, the burden shifts to petitioner, who must then "assert[] specific factual allegations that demonstrate the inadequacy of the state procedure . . . ." Id. The "ultimate burden" of proving procedural default, however, belongs to the state. Id. If the state meets this burden, federal review of the claim is foreclosed unless the petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). "Procedural bar issues are not infrequently more complex than the merits issues presented by the appeal, so it may well make sense in some instances to proceed to the merits if the result will be the same." Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) (citation omitted).

Here, Respondent has submitted evidence and legal argument indicating that Petitioner failed to exhaust his administrative remedies and therefore his claim is procedurally defaulted. MTD; Reply. Petitioner has presented evidence and legal argument challenging the adequacy of the procedural bar and asserting that prison officials caused the default, that he suffered actual prejudice as a result, and that failure to consider his claim would result in a miscarriage of justice. ECF Nos. 9-11 & 18. In light of the conflicting pleadings, the Court elects to proceed to the merits. Franklin, 290 F.3d at 1232.

### B. Petition for Writ of Habeas Corpus

Petitioner argues that his due process rights were violated because there is no evidence that he knowingly possessed the drugs.[1] Pet. at 10-14; Trav. at 8-12. Petitioner alleges that on January 22, 2013, he was asleep in his cell at the Calipatria State Prison when his cellmate Johnson woke him up and stated that correctional officers Ramirez and Nolasco wanted to conduct a random search of their cell. Pet. at 5-6, 11. Petitioner states that during the search, Officer Nolasco discovered four bindles of an unknown substance wrapped in clear plastic inside a "Tide" detergent box on the left side of the lower shelving unit and a phone hidden in Johnson's shoe, and that the bindles tested positive for controlled substances. See id. at 6, 11 (citing Exh. D). Petitioner asserts that his cellmate admitted in his statement to correctional officers and in a sworn declaration that the drugs and the phone were his and that Petitioner had no knowledge of the contraband. See id. (citing Exh. E); Trav. at 9. Petitioner argues that the discovery of contraband in a common area of a prison cell is insufficient to establish constructive possession of the contraband, absent a showing that a prisoner had knowledge of the contraband. See Pet. at 13-14. Petitioner concludes that there was "absolute[ly] no evidence offered at the administrative hearing" to establish his knowledge of the contraband, and that as a result, the "state court's ruling is contrary to Hill 'some evidence' standard." See Pet. at 11-14; Trav. at 9-10.

---

[1] Petitioner's constitutional challenge focuses only on whether there was sufficient evidence to support the finding of guilt. Pet. at 10-14; Trav. at 8-11. Petitioner does not allege a constitutional violation relating to the disciplinary process. Id. In fact, Petitioner admits that he received prior notice of the allegations, was assigned an investigative employee, had the opportunity to present evidence and witnesses, and received a written statement of the disciplinary decision. Pet. at 34-35 & 54-55. While Petitioner argues that the final report was untimely, the argument is made in support of his challenge to the procedural default motion, not as a separate constitutional violation. Trav. at 10.

Respondent asserts that the disciplinary hearing officer's decision complied with due process, including identifying sufficient evidence to support the decision. Ans. at 2-4. Respondent highlights the evidence establishing the presence in Petitioner's cell of multiple individually-packaged drugs valued at over $13,000. Id. at 3-4. Respondent further claims that the fact that Petitioner's cellmate accepted responsibility for the contraband is irrelevant under the "some evidence" standard of review. Id. at 4.

**1. Legal Standard of Review**

The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The clearly established federal law governing due process claims challenging prison disciplinary actions is set forth in Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445 (1985). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In other words, while "a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime," see id. at 555, his interest in due process "must be accommodated in the distinctive setting of a prison" in order to "prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens," see Hill, 472 U.S. at 454-55. When a prison disciplinary proceeding may result in the inmate's loss of good time credits, due process requires that the inmate receive: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Id. at 454 (citing Wolff, 418 U.S. at 563-67).

1    The United States Supreme Court has instructed lower courts that, when evaluating a
2 disciplinary body's ultimate decision, due process is satisfied "if some evidence supports the
3 decision by the prison disciplinary board to revoke good time credits."  Hill, 472 U.S. at 455
4 (describing the evidence in the case as "meager," but nonetheless finding "some evidence" in
5 the record to support the disciplinary board's decision).  This "some evidence" standard is met
6 if "'there was some evidence from which the conclusion of the administrative tribunal could be
7 deduced . . . .'"  Id. (quoting United States ex rel. Vajtauer v. Comm'r of Immmigration, 273
8 U.S. 103, 106 (1927)).  The Hill Court further emphasized that "[a]scertaining whether this
9 standard is satisfied does not require examination of the entire record, independent
10 assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant
11 question is whether there is any evidence in the record that could support the conclusion
12 reached by the disciplinary board."  Hill, 472 U.S. at 455-56.  Though this standard is
13 "minimally stringent", "there must be some indicia of reliability of the information that forms
14 the basis for prison disciplinary actions."  Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987).
15 If the record is "so devoid of evidence that the findings of the disciplinary board were without
16 support or otherwise arbitrary," a due process violation has occurred.   Hill, 472 U.S. at 457.

17    **2. The Rules Violation Report and Subsequent Administrative Review**

18    On January 22, 2013, Correctional Officer P. Preciado wrote a Rules Violation Report
19 ("RVR") charging Petitioner with "Distribution of a Controlled Substance," in violation of
20 Californian Code of Regulations § 3016(c).  Pet., Exh. A at 29-31; Lodgment 2[2]; see also Cal.
21 Code Regs. tit. 15, §3016(c).

---

[2] The Court notes that Lodgment 2 submitted by Respondent does not contain Bates numbers

Officer Preciado's report alleged in relevant parts that:

On Tuesday, January 22, 2013, at approximately 10:00 hours, while performing their duties as H.U. B5 Floor Officers, Correctional Officer R. Ramirez and Correctional Officer P. Nolasco approached cell B5-227 to conduct a random cell search. Cell B5-227 is jointly assigned to Inmate LUCAS, T29390, BS-227L, and Inmate JOHNSON, F51180, BS-227U. Both inmates were in the cell as the officers approached it to begin the search.

. . .

While searching the cell, Officer Nolasco discovered on the left side of the lower shelving unit four (4) individual bindles of an unknown substance wrapped in clear plastic inside a "Tide" detergent box.

. . .

Sergeant Uribe proceeded to weigh the bindles, and they weighed as follows:

Bindle #1 was a black tar substance and weighed approximately 3.9 grams with packaging;
Bindle #2 was a green leafy substance and weighed approximately 2.8 grams with packaging;
Bindle #3 was a white powdery substance and weighed approximately 7.0 grams with packaging;
Bindle #4 was a white powder crystalline substance and weighed approximately 8.5 grams with packaging.

. . .

Sergeant Uribe proceeded to perform a Valley Toxicological Controlled Substance Field Test (Valtox Test) and tested a small sample of each of the bindles containing the unknown substances. The completed test results were as follows:

Bindle #1 containing the black tar substance tested presumptive positive for Opiates (Heroin);
Bindle #2 containing the green leafy substance tested presumptive positive for Marijuana (THC);
Bindle #3 containing the white powdery substance tested presumptive positive for Cocaine;
Bindle #4 containing the white powder crystalline substance tested presumptive positive for Methamphetamine.

. . .

---

or other uniform page labels. See Lodgment 2. For the ease of reference, the Court will cite to the exhibits contained in Petitioner's Petition. See Pet., Exh. A.

> At approximately 13:16 hours Sergeant Uribe advised Inmate LUCAS that the results from the Valtox Test were presumptive positive for Opiates (Heroin), Marijuana (THC), Cocaine and Methamphetamine. Inmate LUCAS accepted the results from the Valtox Field Test and elected to sign the Valtox Field Test Results & Waiver Controlled Substance Identification Form.
> 
> . . .
> 
> Inmate JOHNSON stated that he understood his rights, signed the Notice of Miranda Rights Document, and elected to make the following statement: "Lucas had nothing to do with it, the dope is all mine."
> 
> . . .
> 
> The Department of Corrections has determined that the current value of the contraband in a correctional setting is eight (8) to ten (10) times the current street value. The bindle that was identified as Marijuana (THC) through the V[a]ltox Field Test has an approximate value of $700.00, the bindle that was identified as Methamphetamine has an approximate value of $6,800.00, the bindle that was identified as Cocaine has an approximate value of $2,800.00, and the bindle that was identified as Opiates (Heroin) has an approximate value of $3,120.00. Altogether, the approximate total value of all the bindles is $13,420.00. In an institutional setting this would be considered to be a large quantity of controlled substances.

Id., Exh. A at 29-31.

The disciplinary hearing on the RVR was held on February 27, 2013. Id. at 34. All reports used as evidence against Petitioner, including Officer Preciado's report, were disclosed to Petitioner at least 24 hours in advance of the hearing, and he was assigned an investigative employee, Officer C. Pankratz. Id. During the hearing, Petitioner stated "I had no knowledge of anything. It's just like waking up from a bad dream. I don't know anything." Id. at 35.

The Senior Hearing Officer ("SHO") found Petitioner guilty of distribution of a controlled substance, in violation of California Code of Regulations §3016(c) (providing that "[i]nmates shall not distribute . . . any controlled substance"). Id.; Cal. Code Regs. tit. 15, §3016(c). In reaching this decision, the SHO relied on the reports prepared by the reporting employee and by Sergeant Uribe, the photographs of the drug bindles and the Tide detergent box in which

they were found, and the Valtox Field Test Results/Waiver signed by Petitioner. Pet. at 35-38.

The SHO noted the following:

> the combined weight of the Bindles recovered had a combined weight of 22.2 grams with packaging, supporting a finding of "GUILTY for Distribution as defined in the California Code of Regulations, Title 15, Section 3000. The SHO noted that the Department of Corrections and Rehabilitation (CDCR) has determined that the current value of the contraband in a correctional setting is eight (8) to ten (10) times the current street value. The approximate value of the bindles discovered in cell B5-227 is $13,420.
>
> The SHO believes that ACTUAL POSSESSION means it is under the immediate physical control of the person in question; and CONSTRUCTIVE POSSESSION means the person may not have the object in his/her physical possession but it remains under his/her direct control or control through another person. As implied by CCR 3287, an inmate has Constructive Possession of anything found in his/her assigned area of control. An inmate assigned to a cell is responsible for anything found in that cell. If he/she has a roommate, this area is under their mutual control and both can be found guilty of possession.
>
> The SHO believes that sufficient evidence is present to prove Inmate LUCAS's intent, knowledge and active participation in the planned introduction of Controlled Substances into a Correctional Facility for profit.
>
> The evidence presented describes the inmate as a distributor rather than a consumer. The SHO believes that a consumer has enough for himself to use and does not sell to other inmates. The SHO believes that evidence of sales to other inmates or the direct involvement in smuggling also qualifies as *Trafficking*.
>
> The SHO believes "Trafficking" requires evidence of smuggling or sales of a controlled substance. One clue to trafficking is possession of quantities greater than would be required for merely personal use. Another clue is the variety of different types of narcotics. The SHO believes that both of these requirements have been established.
>
> The SHO is convinced that the preponderance of evidence presented at this hearing supports a finding of "GUILTY" for the specific act of "INTRODUCTION OF A CONTROLLED SUBSTANCE FOR DISTRIBUTION." The SHO believes that Inmate LUCAS was directly involved in the planned introduction, distribution and sales of a controlled substance, and possession of contraband within a Correctional Facility.

Id. at 38-39.  Petitioner was assessed the forfeiture of 180 days of good-time credit, one year loss of visits concluding on February 26, 2014, two years loss of contact visits concluding on February 26, 2016, mandatory Alcoholics Anonymous or Narcotics Anonymous meeting attendance, and mandatory random drug testing for one year ending on February 26, 2014. Id. at 39.

Petitioner administratively appealed his disciplinary conviction.  Lodgment 3. Petitioner's Second Level Appeal was granted in part in that it instructed that a Modification Order be drafted correcting the administrative penalties in the RVR; however Petitioner's request that the RVR be reversed, and all credits and privileges restored, was denied.  See Lodgments 3 & 4.  Petitioner's appeal to the Third Level was cancelled as untimely, and Petitioner's separate appeal challenging the cancellation decision was denied at the Third Level of Review.  See Lodgment 5.

**3. Collateral Review**

On September 5, 2014, Petitioner filed a petition for writ of habeas corpus in the Imperial County Superior Court alleging that a senior hearing officer violated his due process rights in finding him guilty of a disciplinary violation because there was insufficient evidence to support the disciplinary finding.  Lodgment 6.  On September 19, 2014, the Superior Court denied Petitioner's petition due to his failure to exhaust administrative remedies.  Lodgment 7. On December 16, 2014, Petitioner filed his petition with the California Court of Appeal, Fourth District, Division One, which the Court of Appeal denied on the merits.  Lodgments 10 & 11. In reaching this decision, the court stated:

> Lucas contends the evidence does not support a finding of guilt because his cellmate admitted that the controlled substances belonged only to him and not to Lucas. The Legislature has given the Department of Corrections and

> Rehabilitation broad authority to discipline persons confined in state prisons. (Pen. Code, § 5054.) Generally, prison discipline falls within the expected parameters of the sentence imposed by the court of law and does not implicate the due process clause or create a right to judicial review. (*Sandin v. Conner* (1995) 515 U.S. 472, 482-483.) Prison disciplinary findings must be supported by "some evidence." (*In re Rothwell* (2008) 164 Cal.App.4th 160, 165, citing *Superintendent v. Hill* (1985) 472 U.S. 445, 455.) The relevant question is whether there is any evidence in the record that could support the conclusion reached by the prison authorities. (*Superintendent v. Hill*, *supra*, at pp. 455-456.)
>
> The controlled substances were found hidden inside a detergent box in the common area of Lucas's prison cell. Under our limited review, this constitutes "some evidence" to support a finding that Lucas was in constructive possession even if his cellmate acknowledged that the narcotics were his. (*In re Zepeda* (2006) 141 Cal.App.4th 1493, 1500.) Given the large quantity of controlled substances, some evidence supports the hearing officer's conclusion that Lucas and his cellmate harbored intent to distribute the controlled substances.

Lodgment 11 at 1-2.

On February 20, 2015, Petitioner filed a habeas petition in the California Supreme Court [Lodgment 12], which was denied on May 13, 2015. Lodgment 13 (citing In re Dexter, 25 Cal. 3d 921, 925-26 (1979)[3]).

### 4. **Analysis**

The Court finds that the evidence that the senior hearing officer relied upon in finding Petitioner guilty of the distribution of a controlled substance meets Hill's "some evidence" standard. See Hill, 472 U.S. at 455. The reports prepared by the reporting officer and

---

[3] Dexter stands for the proposition that a prisoner must exhaust his administrative remedies before filing a habeas corpus petition in state court. Vera v. Adams, 2013 WL 6196534, at *8 (S.D. Cal. Nov. 27, 2013) (citing In re Jackson, 39 Cal. 3d 464, 468 (1985); In re Estevez, 165 Cal. App. 4th 1445, 1457 (2008) (stating that prisoners are required to exhaust their administrative remedies before bringing a grievance to state court); Wright v. State, 122 Cal. App. 4th 659, 665 (2004) (stating that "[u]nder state law, exhaustion of the administrative remedy is a jurisdictional prerequisite to the courts") (internal quotation marks omitted)).

Sergeant Uribe establish that four bindles containing a variety of weights and types of drugs were found on a lower shelf within the reach of both inmates in the common area of the cell and that the drugs were worth more than $13,000 in the prison setting. Pet. at 29-31. In applying the Hill standard, the Ninth Circuit has found that a reporting officer's testimony is sufficient in and of itself to support a disciplinary conviction, so long as the factual information relied upon has "some indicia of reliability." See Bostic v. Carlson, 884 F.2d 1267, 1271 (9th Cir. 1989) ("[t]he reporting officer's testimony constituted sufficient evidence to support the finding of guilty") (citing Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir. 1987)); Cato, 824 F.2d at 705; see also Peralta v. Woodford, 2005 WL 1398524, at *5 (E.D. Cal. June 13, 2005), *adopted*, 2005 WL 2615357 (E.D. Cal. Oct. 14, 2005) (statements of prison officials in rules violation report and supplemental report were sufficient to support petitioner's disciplinary conviction). Moreover, the amounts, types, and values of the drugs (3.9 grams of heroin worth approximately $3,120, 2.8 grams of marijuana worth approximately $700, 7.0 grams of cocaine worth approximately $2,800, and 8.5 grams of methamphetamine worth approximately $6,800) provide ample evidence that the drugs were intended for distribution. See Dickerson v. Foulk, 2014 WL 6612094, at *1-2 (E.D. Cal. Nov. 20, 2014) (citing the large quantity and the varying weight of the bindles of methamphetamine discovered in petitioner's cell as evidence that the drugs were intended for distribution, where the petitioner was convicted during a disciplinary hearing of "constructive possession with intent to distribute"). As such, there is clearly the requisite some reliable evidence supporting the finding that Petitioner was guilty of distributing a controlled substance.

Petitioner argues that there is no evidence to support a finding that he *knew* the drugs were in his cell or that he knowingly possessed them, especially since his cellmate accepted

responsibility for the drugs and specifically stated that Petitioner did not know about the drugs, and that therefore the finding of guilt is unconstitutional. Numerous courts have rejected Petitioner's argument and found the requisite "some evidence" supporting guilt even when a cellmate accepts responsibility for the crime. See Givens v. McComber, 2015 WL 6167660, at *6 (E.D. Cal. Oct. 20, 2015) ("Petitioner's denial of responsibility, and his cellmate's acceptance of responsibility for the contraband do[] not require that the prison disciplinary [decision] be overturned."); Castodio v. Grounds, 2013 WL 3815664, at *3 (N.D. Cal. July 21, 2013) (same). In reaching this decision, courts note that the hearing officer is responsible for deciding credibility issues and evaluating evidence and that the officer is not required to accept as true a cellmate's claim of sole responsibility. See Kiefer v. Hedgpeth, 2011 WL 97732, at *3 (N.D. Cal. Jan. 12, 2011) (noting that "the fact that an inmate offered a defense did not mean that the hearing officer had to accept it as true," and that "[t]he fact that the cellmate admitted possession of the [contraband] did not logically eliminate liability for [petitioner], as both may have constructively possessed the [contraband]."); Castodio, 2013 WL 3815664, at *3 (noting that the "the cellmate's admitted possession of the [contraband] did not logically eliminate liability for [petitioner], as both could have constructively possessed the [contraband]."); Givens, 2015 WL 6167660, at *6 (same); see also Liu v. Hill, 2014 WL 1389763, at *7 (E.D. Cal. Apr. 9, 2014) (citing the hearing officer's observation that "[o]ne inmate pleading guilty [to the possession of contraband] is a common tactic used to attempt to find the other not guilty.").

The reviewing court is not to engage in an "examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence," and is solely to determine whether there is "any evidence in the record that could support the

conclusion reached by the disciplinary board." <u>Hill</u>, 472 U.S. at 455-56.  Here, the exculpatory statements made by Petitioner and his cellmate and all of the inculpatory evidence obtained by the prison officials were presented to the senior hearing officer, who considered all of the evidence, assessed credibility, weighed the evidence, and determined that Petitioner possessed a controlled substance with intent to distribute.  <u>See</u> Pet., Exh. B.  Under <u>Hill</u>, a due process violation may be found only if the senior hearing officer's findings were entirely "without support" or "arbitrary" and, on the evidentiary record presented, the Court finds that was not the case here.  <u>See</u> <u>Hill</u>, 472 U.S. at 457.  Although the statements supported Petitioner's assertion of innocence, the evidence supporting the disciplinary decision had "some indicia of reliability" and was constitutionally sufficient to support the finding of guilt. <u>See id.</u> ("[t]he Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board."); <u>Fulmer v. Sisto</u>, 2009 WL 2030942, at *4 (E.D. Cal. July 9, 2009) ("It does not matter that the possibility that [petitioner's] cellmate possessed the contraband was not conclusively negated.  [P]etitioner's argument amounts to nothing more than a challenge to the weight prison officials chose to give [cellmate']s declaration in concluding that petitioner . . . was guilty of possession of contraband."); <u>see also</u> <u>Kiefer</u>, 2011 WL 97732, at *3-4 (noting that under "some evidence" standard articulated in <u>Hill</u>, "a disciplinary decision would be upheld even if the reviewing court thought there was 'a realistic possibility' that the inmate was not guilty *so long as there was some evidence that he was*.") (emphasis added) (citing <u>In re Zepeda</u>, 47 Cal. Rptr. 3d 172).

Accordingly, the Court finds that "some evidence" supports the senior hearing officer's finding that Petitioner was guilty of the distribution of a controlled substance and that Petitioner's due process rights were not violated.  <u>See</u> <u>Hill</u>, 472 U.S. at 455-56; <u>see also</u>

Dickerson, 2014 WL 6612094, at *1-3 (finding that "some evidence" standard was satisfied, where petitioner challenged his disciplinary conviction for "constructive possession of a controlled substance for the purpose of distribution," which resulted in the revocation of good time credits, where bindles of methamphetamine were found hidden in the cell petitioner shared with a cellmate); Kiefer, 2011 WL 97732, at *1, *3-4 (finding that the "some evidence" standard was satisfied and petitioner's due process rights were not violated, where the petitioner challenged his disciplinary conviction for possession of controlled medication that resulted in a good time credit forfeiture, claimed that he did not know that the contraband was in the cell, his cellmate took responsibility for the contraband, and the contraband was found in the common area); Orr v. Rackley, 2016 WL 1268113, at *1, *4 (E.D. Cal. Mar. 30, 2016) (finding that "the evidence that the marijuana was discovered on a lower shelf [hidden between two slices of bread] in petitioner's cell where both petitioner and his cellmate had access . . . constitute[d] 'some evidence' that petitioner had constructive possession of the marijuana," where the petitioner challenged his prison disciplinary conviction for possession of a controlled substance, which resulted in credit loss, and argued that prison staff violated his due process rights); Johns v. McEwen, 2013 WL 474780, at *1, *5 (S.D. Cal. Feb 6, 2013) (finding that "the location of the [contraband] and the fact that [p]etitioner and his cellmate were the only two inmates housed in the cell [wa]s sufficient evidence to satisfy the 'some evidence' standard proscribed by Hill" and that the petitioner's due process rights were not violated, where the petitioner challenged his disciplinary conviction and forfeiture of good time credits, and the contraband, a cellular phone, was found inside a hot pot on top of the cell's top bunk) (internal quotation marks omitted). The court of appeal's decision affirming the disciplinary conviction was neither an unreasonable application of Hill nor an objectively

unreasonable determination of the facts.[4]  See 28 U.S.C. § 2254(d).  The Court, therefore **RECOMMENDS** that Petitioner's petition be **DENIED**.  Because the Court recommends that the Petition for Writ of Habeas Corpus be denied on the merits, the Court **RECOMMENDS** that Respondent's motion to dismiss be **DENIED** as **MOOT**.

## CONCLUSION AND RECOMMENDATION

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Judge issue an Order: (1) approving and adopting this Report and Recommendation, (2) directing that Judgment be entered **DENYING** the Petition, and (3) **DENYING AS MOOT** Respondent's motion to dismiss.

**IT IS HEREBY ORDERED** that no later than **July 1, 2016**, any party to this action may file written objections with this Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

///
///
///
///
///

---

[4] The Court acknowledges that the California Supreme Court denied the petition on a different basis (failure to exhaust) than the appellate court (sufficient evidence to support the finding of guilt) and that therefore an argument could be made that a different standard of review is appropriate.  See Ans. at 3 n.1 (asserting that an AEDPA standard of review does not apply and that the Court should review the claim under the Hill standard of review).  While the Court does not believe that a *de novo* review is required, the Court would reach the same decision—that is, that there is sufficient evidence supporting the SHO's finding of guilt—if the Court conducted a *de novo* review.

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **July 22, 2016**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED**.

Dated: 6/7/2016

Hon. Barbara L. Major
United States Magistrate Judge